UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/9/20
```

Nancy J. Soto,

              Plaintiff,

–v–

Disney Severance Pay Plan, *et al.*,

              Defendants.

19-cv-4048 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

    Plaintiff, a long-time former employee of Disney, brings this action for severance benefits under an ERISA plan. She alleges that she is entitled to severance benefits because Disney terminated her employment due to her disability. Defendants have moved to dismiss. For the reasons that follow, Defendants' motion is GRANTED.

## I. BACKGROUND

### A. The Facts

    Plaintiff began working for Marvel Entertainment in 1995. Compl. ¶ 9. Almost fifteen years later, Disney acquired Marvel, and Soto subsequently "became a Disney employee." *Id.* In 2016 and 2017, Soto "suffered significant medical problems," including a "severe stroke," and since that time she has "been disabled and unable to work." *Id.* ¶ 10. Disney thus placed Soto on a "leave of absence" in late 2016. *Id.* And in 2018, Disney terminated Soto's employment "because of 'her inability to return to work on account of her disabling illness.'" *Id.* ¶ 11 (quoting the Denial Letter, which is discussed below). At the time of her termination, Soto was in a managerial role. *See id.* ¶ 19.

1

Following her termination, Soto applied for benefits from the Disney Severance Pay Plan (the Plan), which is an employee benefit plan under ERISA. *Id.* ¶ 5. Section 3 of the Plan lays out "how . . . you become eligible for benefits." Severance Plan, Dkt. No. 40, Ex. 2, § 3.[1] The Plan creates three requirements for eligibility: (1) the person must be an "Eligible Employee," (2) the person must be "specifically informed in writing that [she is] a Participant," and (3) the person's "employment termination" must be "a Layoff." Compl. ¶ 16; *see also* Severance Plan § 3(a). The first requirement—that the person be an Eligible Employee—is not at issue here. This case focuses on the second requirement, which the Court refers to as the notice requirement, and the third requirement, which the Court refers to as the layoff requirement.

The Plan does not provide any additional detail about the notice requirement; for example, it does not explain the criteria Disney will use to determine whether to "specifically inform[]" someone that they are a "Participant" under the Plan. *See* Severance Plan § 3(a). However, the Plan does define the term Layoff:

> Layoff. The involuntary termination of employment of an Eligible Employee from the Company, except for reasons of poor performance or misconduct as determined by the Company in its sole and absolute discretion. Notwithstanding the foregoing, in no event will an involuntary termination of employment be considered a Layoff if such involuntary termination does not qualify as a "separation of service" within the meaning of section 409A of the Code and Treasury Regulation section 1.409A-1(h).

*Id.* § 2(l).

Moreover, the Plan provides the Plan Administrator plenary discretion to interpret and apply its provisions:

---

[1] Because the Severance Plan, Denial Letter, and Appeal Letter are both integral to Ms. Soto's complaint and incorporated into the complaint by reference, the Court considers them on this posture. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 59–60 (S.D.N.Y. 2010) (collecting cases).

> The Plan is administered and operated by the Plan Administrator, who has complete authority, in its sole and absolute discretion, to construe the terms of the Plan (and any related or underlying documents or policies), to interpret applicable law, to make findings of fact and to determine the eligibility for, and amount of, benefits due under the Plan to Participants or any persons claiming benefits derivatively through them.  All such interpretations and determinations of the Plan Administrator (whether of fact or law) will be final and binding upon all parties and persons affected thereby.  If challenged in a legal proceeding, the Plan Administrator's interpretations and determinations will be reviewed under the most deferential abuse of discretion standard of review.

*Id.* § 8(b).

Applying these requirements, Disney denied Soto's claim for severance benefits for two reasons.  First, the Plan Administrator concluded that Disney had not informed her in writing that she was a Plan Participant, and thus Soto did not satisfy the notice requirement.  Second, the Plan Administrator concluded that her termination did not constitute a "Layoff" within the Plan's meaning, and thus she did not satisfy the layoff requirement.  Compl. ¶ 20; *see also* Dkt. No. 40, Ex. 4 (Denial Letter).  Because she did not meet two requirements for eligibility, her claim for benefits was denied.  Disney subsequently upheld this denial of benefits in an administrative appeal.  Compl. ¶¶ 14–15; *see also* Dkt. No. 40, Ex. 5 (Appeal Letter).

**B.  This Case**

Soto filed this action in May 2019.  She named as Defendants the Walt Disney Company (which is the "Plan Sponsor" under ERISA), the Plan itself, the Investment and Administrative Committee of the Plan (which is the "Plan Administrator" under ERISA, *see* Severance Plan § 2(o)), and twenty John Does who Plaintiff alleges are or were members of the plan-administration committee.  Compl. ¶¶ 4–8.  She claims that Disney improperly denied her benefits claim and that she is entitled "to severance benefits in the amount $44,227.00 based on twenty-two . . . Years of Service."  Compl. ¶ 18.  She also brings claims for breach of fiduciary

3

duty, breach of ERISA's disclosure requirements, and failure to timely provide requested documents.  *Id.* ¶¶ 46–52, 58–69.  And she alleges that the Plan "should be reformed to comply with ERISA and Plaintiff's reasonable understanding of its terms and as reformed Plaintiff should be granted benefits."  *Id.* ¶ 57.

Defendants have moved to dismiss.  Dkt. No. 25.  While the motion was pending, the Court permitted limited discovery to proceed.  *See* Dkt. No. 31.  Disney's motion to dismiss is now before the Court.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In other words, "the complaint's factual allegations must be enough to raise a right to relief above the speculative level, i.e., enough to make the claim plausible."  *Arista Records, LLC, v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal citations and alterations omitted).  "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678. In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of the non-moving party.  *McCarthy*, 482 F.3d at 191.  Generally, "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint" may be considered in assessing whether a claim is sufficient to survive a Rule 12(b)(6) motion.  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

### III. DISNEY'S MOTION IS GRANTED

#### A. Plaintiff Alleges That She Has Failed to Comply with the Notice Requirement

This case begins and ends with the Plan's notice requirement. To recap, the Plan provides that "[y]ou become eligible for benefits under the Plan (i.e., you become a 'Participant') if . . . you are specifically informed in writing that you are a Participant." Severance Plan § 3(a). In her Complaint, Soto alleges that "the other reason [in addition to failure to satisfy the layoff requirement] provided for the denial of severance benefits was 'that [Plaintiff] was never informed in writing by the Company that the circumstances of her separation of employment qualified her for Plan benefits.'" Compl. ¶ 24 (quoting Appeal Letter at 1). Plaintiff further alleges that "Plaintiff never received this information," in reference to the notice requirement. *Id.* ¶ 25. She claims that she "never received this information . . . because a decision had been made that she had not incurred a Layoff." *Id.*

Even drawing all inferences in her favor, Soto has averred in her complaint that she never received notice from Disney as to her being a Participant—and she therefore did not satisfy the notice requirement. Compl. ¶ 25. And there is no dispute here that the notice requirement, which is one of three requirements listed in a conjunctive list, is substantively distinct from the layoff requirement. *See* Separation Plan § 3(a). Indeed, both the Denial Letter and the Appeal Letter recognize these as distinct requirement for eligibility. *See* Denial Letter at 1; Appeal Letter at 1. Under the Plan's clear language, therefore, the allegations in Soto's complaint disqualify her for severance benefits. *Compare* Compl. ¶ 25 *with* Separation Plan § 3(a).

As the Second Circuit has repeatedly admonished, "unambiguous language in an ERISA plan must be interpreted and enforced according to its plain meaning." *Connors v. Conn. Gen. Life. Ins. Co.*, 272 F.3d 127, 137 (2d Cir. 2011) (cleaned up); *see also Aramony v. United Way of*

*Am.*, 254 F.3d 403, 412 (2d Cir. 2001).  In other words, "[w]hen the language of an ERISA plan is unambiguous, we will not read additional terms into the contract."  *Connors*, 272 F.3d at 137 (citing *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 149 (2d Cir. 1999)).  Even on this posture, the Court must apply the Plan's plain text—and doing so precludes Soto's claim for benefits, as she admits she does not satisfy a requirement for the benefits she seeks.  Defendants are correct that "[w]ith [her] allegations, Plaintiff [has pled] herself out of court."  Def. Br., Dkt. No. 26, at 6.

    *Kraemer v. HSBC USA Inc.* is instructive in this regard.  No. 00-cv-9568 (DLC), 2001 WL 893679 (S.D.N.Y. Aug. 8, 2001).  There, two former employees sought severance benefits under an ERISA qualified plan.  *Id.* \*\*1–2.  The plan limited benefits to "Eligible Employees," which it defined as "any person who, as of the Effective Date [January 31, 1999]: (i) is a regular, full-time, salaried employee of an Employer, and (ii) does not have a contract for a definite term of employment with such Employer, *and who receives written notice on or before April 30, 1999 that his or her employment is or will be terminated as a result of the Reorganization at a specified Termination Date*."  *Id.* at \*1 (emphasis added).  The employer denied their benefits claims, concluding that the employees were not "Eligible Employees" within the meaning of the plan because they did have contracts for definite terms of employment.  *Id.* at \*2.  The district court upheld this decision, agreeing that the employees' contracts were for a definite term.  *Id.* at \*\*3–4.  Importantly for present purposes, the district court *also* upheld the denial of benefits because "even when analyzed under a de novo standard of review, the plaintiffs are not 'Eligible Employees' under the Plan because they did not receive the 'written notice' that their employment was being terminated 'as a result of the Reorganization,' as required by the Plan."  *Id.* at \*4.  As the court explained, "[t]he Plan explicitly requires written notice that the plaintiffs

6

did not receive. Thus, plaintiffs were not "Eligible Employees" under the Plan, and the Plan Administrator's denial of severance benefits to plaintiffs was correct." *Id.* The same is true here. Disney's Severance Plan "explicitly requires written notice that the plaintiff[] did not receive," and thus the "Plan Administrator's denial of severance benefits to plaintiff[] was correct." *Id.*; *see also* Severance Plan § 3(a).

### B. Plaintiff's Counterarguments are Unavailing

Soto raises several arguments for why—even though she alleges that she does not satisfy one of the Severance Plan's requirements for eligibility—her complaint should nonetheless survive Disney's motion to dismiss. *First*, Soto rightly points out that Disney interpretation of this requirement means that the employer has discretion to "specifically inform[] [employees] in writing that [they] are a Participant" Severance Plan § 3(a). Soto argues that if the notice requirement does grant Disney this unilateral discretion, then Defendants have impermissibly transformed the ERISA-qualified Severance Plan into an "ad hoc severance plan." Pl. Br. at 8. In other words, Plaintiff suggests that this interpretation would remove the Plan from the realm of ERISA—and therefore, the Court should not construe the notice requirement as giving Disney this discretion.

Under ERISA, an "employee welfare benefit plan" includes any "plan, fund or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries . . . benefits in the event of . . . unemployment." 29 U.S.C. § 1002(1). ERISA applies only where an employer's undertaking or obligation requires the implementation of an "ongoing administrative program." *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987)*; see also Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 76 (2d Cir. 1996). Thus, ERISA is not implicated where the employer's benefit program merely requires it make a

7

"payment triggered by a single event," such as an employee's termination, or where the employer's obligation does not require administration and is satisfied by "do[ing] little more than writ[ing] a check." *Fort Halifax*, 482 U.S. at 12. This is because an employer's promise, absent an "ongoing administrative program or scheme," to "make a one-time, lump-sum payment triggered by a single event will rarely if ever implicate the need for uniformity that Congress sought when it included within ERISA a provision that preempted state laws relating to benefit plans." *Okun v. Motefiore Med. Ctr.*, 793 F.3d 277, 279 (2d Cir. 2015) (citation and quotation marks omitted). Accordingly, to determine whether an ERISA plan requires the implementation of an ongoing administrative scheme, the Second Circuit has instructed courts to consider three factors: (1) "whether the employer's undertaking or obligation requires managerial discretion in its administration"; (2) "whether a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits"; and (3) "whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria." *Schonholz*, 87 F.3d at 76 (collecting cases). These factors, however, "are not the exclusive factors that may be considered, and no one is determinative." *Hardy*, 957 F. Supp. 2d at 414 (citation omitted).

      Soto does not mention these factors or argue that any of them undercut the Plan's status under ERISA. Instead, she cites only one case, *Schnitzer v. Bank Leumi USA*, No. 09-cv-3171 (CM), 2010 WL 3069646 (S.D.N.Y. July 29, 2010), in support of her position. There, the employer had "awarded severance payments on an ad hoc basis to a few employees upon departure—some in circumstances where legal action was threatened and the employer sought to avoid it; others when employment is lost during a reduction in force or when the employer wants to "accelerate" an employee's departure." *Id.* at *4. Those "arrangements were pursuant to

8

agreements reached individually between [the employer] and the employee," and several employees had left the employer without receiving any severance. *Id.* The court concluded that "there is no evidence that any severance plan exists . . . there are no plan documents, no plan administrator, no plan fiduciaries, no segregated funds, no standards by which decisions about qualifications must be made, no formulas for determining benefits, no procedure for submitting claims, and no provisions for administrative review of decisions." *Id.* at *5. Here, to the contrary, even accepting Plaintiff's allegations as true and drawing all reasonable inferences in her favor, it is undisputed that there is an ERISA qualifying plan between the parties, there is a plan administrator, and there are standards by which decisions are made (for example, the Plan defines the term "Layoff"). *See* Severance Plan §§ 2(l), 2(o), 4 (laying out extensive scheme for calculating benefits based on variables like an employee's position and tenure). In addition, it is again undisputed that the Plan creates a detailed formula to determine benefits, a procedure to submit claims, and a two-step procedure for administrative decision-making on benefit claims. *See id.* §§ 2, 3, 4, 6. Even on this posture, therefore, the Court concludes that *Schnitzer* is inapt and that the discretion retained by Disney in the notice requirement does not transform the Plan into an "ad hoc" severance scheme outside the realm of ERISA. *See Schnitzer*, 2010 WL 3069646, at **4–5; *Melendez v. New York Foundling, Inc.*, No. 17-cv-6162 (KMK), 2019 WL 1084776, at *5 (S.D.N.Y. Mar. 7, 2019).

*Second*, Plaintiff argues that the Plan violates ERISA because "[e]ligibility for benefits cannot be premised on Disney's whim." Compl. ¶ 36. Plaintiff roots this argument in ERISA's requirement that plan administrators provide plan participants with a summary plan description (SPD). *See* 29 U.S.C. § 1022. Plaintiff alleges, and Disney does not dispute, that Disney's Severance Plan document functions as *both* the benefits plan itself and the SPD. *See* Compl.

9

¶ 33 (alleging that "here . . . the Plan and the SPD are the same document."); *see also id.* ¶ 56. ERISA requires that a "summary plan description . . . shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). Moreover, ERISA's implementing regulations require SPDs to include "a statement clearly identifying circumstances which may result in . . . ineligibility . . . ." 29 C.F.R. § 2520.102-3(l). Plaintiff contends that because the Plan does not contain the factors by which Disney will exercise its discretion to provide employees notice, it violates ERISA's strictures regarding SPDs.

Even accepting Plaintiff's allegations as true, however, Plaintiff has not shown that the Plan violates these requirements. Section 3 of the Plan contains a simple title: "HOW DO YOU BECOME ELIGIBLE FOR BENEFITS?" The first subsection is titled "<u>Eligibility</u>." Plan § 3(a). And as noted, that subsection states that "You become eligible for benefits under the Plan (i.e. you become a 'Participant') if . . . you are specifically informed in writing that you are a Participant . . . ." *Id.* Soto contends that because this requirement does not contain the criteria by which Disney will determine whether to inform an employee that she is a Participant, it violates ERISA's SPD requirements. However, she does not cite ERISA's text or its implementing regulation for the proposition that a plan violates ERISA if it gives an employer discretion to determine a single requirement for eligibility. Soto cites only the Second Circuit's decision in *Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 739 (2d Cir. 2001) in support of this position. But the ERISA plan in that case did *not* confer upon the administrator "discretion to interpret the terms of the plan." *Id.* And the Second Circuit recognized that clear language in an ERISA plan conferring discretion upon an employer to determine eligibility must

10

be enforced.  *Id.* ("Although a plan need not contain any magic words such as discretion and deference, it must, nevertheless, give some unambiguous indication that discretion has been conferred." (cleaned up) (citing *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1267–71 (2d Cir. 1995)).  Yet here, even drawing all reasonable inferences in favor of Soto, the Plan provided that Disney had discretion to determine whether it would provide notice sufficient to satisfy the notice requirement.  *See* Plan § 3(a).  And Section 8(b) of the Plan clearly provides, "The Plan is administered and operated by the Plan Administrator, who has *complete authority*, in its *sole and absolute discretion*, to construe the terms of the Plan (and any related or underlying documents or policies), to interpret applicable law, to make findings of fact and to determine the eligibility for, and amount of, benefits due under the Plan to Participants or any persons claiming benefits derivatively through them."  Plan § 8(b) (emphases added).

      Ultimately, Plaintiff's argument rests on a faulty premise: that to satisfy ERISA's requirements, not only must an employer explain that it retains discretion to determine whether an employee has met one requirement—as Disney has undisputedly done here—but *also* provide an exhaustive list of the criteria by which it will make that determination.  But she cites no ERISA provision, regulation, or caselaw in support of her novel position.  To the contrary, in cases like *Kraemer*, courts have affirmed a plan administrator's denial of benefits where employers retained discretion to provide employees notice of eligibility, did not provide the criteria they used to make that decision, and ultimately exercised that discretion adverse to the employee's interests.  *Kraemer*, 2001 WL 893679, at *4.  And though Plaintiff spends much of her Complaint arguing that the Plan violates these requirements, the Court need not accept Plaintiff's lengthy legal analysis as true; to the contrary, the complaint's legal conclusions are entitled to no weight on this posture.  *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see e.g.*, Compl. ¶¶ 39–44 (alleging legal conclusions and even citing caselaw). Soto's argument that the Plan violates ERISA's SPD requirements therefore fails. *See Kosakow*, 274 F.3d at 739.

*Third*, Soto argues that Disney has "waived" its ability to rely upon the notice requirement to defend its denial of benefits. ERISA's implementing regulations require that when a plan administrator issue an "adverse benefit determination," it must notify the claimant of "[t]he specific reason or reasons for the adverse determination." 29 C.F.R. § 2560.503-1(g)(i). Here, however, both the Denial Letter and the Appeal Letter stated that Soto's claim was denied partially because she failed to satisfy the notice requirement (Disney also concluded that Soto failed to satisfy the layoff requirement, an issue the Court need not address here). Specifically, the Denial Letter states that "an individual becomes eligible for benefits under the Plan *only if*" she satisfies the notice requirement. Denial Letter at 1 (emphasis added). And the Denial Letter further states that "Soto was *not notified in writing* that her separation was a Layoff making her a Participant eligible for severance pay and benefits under the Plan." *Id.* (emphasis added). The Appeal Letter similarly states "Soto did not meet the separate requirement for Plan eligibility in that she was never informed in writing by the Company that the circumstances of her separation of employment qualified her for Plan benefits." Appeal Letter at 1. Indeed, as the Court has noted, Plaintiff alleges in her Complaint that she never received this notice. Compl. ¶ 25. Because Disney premised its denial of benefits partially on the notice requirement, both in its initial determination and on appeal, Disney has not waived its ability to rely upon this requirement to defend the denial of benefits in this litigation. *Cf. Juliano v. Health Maint. Org. of N.J., Inc.*, 221 F.3d 279, 287 n.1 (2d Cir. 2000).

The Court notes that because the Plan vests the Plan Administrator with discretion to send notice, the Administrator's exercise of that discretion would generally be reviewed under an arbitrary and capricious standard. *See Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008); *Murphy v. IBM*, 23 F.3d 719, 721 (2d Cir. 1994) ("Where an ERISA-covered benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits, the administrator's decision will not be disturbed unless it is arbitrary and capricious."); (citing *Reichelt v. Emhart Corp.*, 921 F.2d 425, 431 (2d Cir. 1990)); *see, e.g.*, *Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 511 (S.D.N.Y. 2018), *adhered to on denial of reconsideration sub nom. Weinreb v. Xerox Bus. Servs.*, No. 16-CV-6823 (JGK), 2020 WL 4288376 (S.D.N.Y. July 27, 2020) ("Because the Plan grants [the employer] discretion to determine eligibility for benefits . . . this Court will employ arbitrary and capricious review."). However, Soto does not argue that the Court should review the Plan Administrator's decision not to send Soto notice under this standard. *See* Pl. Br. 6–11. Nor does Soto argue that the Administrator's exercise of this discretion was in fact arbitrary and capricious. *Id.* Soto has therefore waived any such argument, and the Court does not consider it. *See Coalition on W. Valley Nuclear Wastes v. Chu*, 592 F.3d 306, 314 (2d Cir. 2009)

### C. Plaintiff's Remaining Claims Are Dismissed

In addition to her claims for benefits under the Plan, Soto brings claims for breach of fiduciary duty, violation of disclosure requirements, failure to timely provide documents, and equitable relief. *See* Compl. ¶¶ 46–69. Defendants have also moved to dismiss these claims.

To begin, Soto alleges that "[t]he Committee and its Members (or whoever actually decided the Claim) and Disney breached [its fiduciary duty] by denying Plaintiff benefits based on Plan terms that are inconsistent with ERISA." *Id.* ¶ 48. ERISA "imposes a duty on

fiduciaries (which include plan administrators) to 'discharge [their] duties with respect to a plan solely in the interest of the participants and . . . with the care, skill, prudence, and diligence under circumstances then prevailing that a prudent man acting in a like capacity and familiarity with such matters would use in the conduct of an enterprise of a like character and with like aims." *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 579 (2d Cir. 2006) (quoting 29 U.S.C. § 1104(a)(1)(B)). However, for the reasons the Court has already discussed, Plaintiff has failed to plead a violation of the Plan or demonstrate that the notice requirement's grant of discretion to Disney violates ERISA. *See Kraemer*, 2001 WL 893679, at *4. And even accepting Plaintiff's well-pleaded allegations as true, Plaintiff has failed to demonstrate that Disney failed to provide the Plan's eligibility requirements to participants "in a manner calculated to be understood by the average plan participant." *See* 29 U.S.C. § 1022. This claim must thus be dismissed. Moreover, Plaintiff's claim for violation of disclosure requirements must also be dismissed, as by its own terms it is premised upon a finding that "benefits . . . [were] properly denied to Plaintiff under the terms of the Plan," which the Court has already concluded, even drawing all reasonable inferences in Plaintiff's favor, is not the case here. *See* Compl. ¶¶ 50–52.

Next, Plaintiff brings a claim for equitable reformation. ERISA § 502(a)(3) allows plan participants, beneficiaries, or fiduciaries to bring civil actions to enjoin any act or practice that violates ERISA or to obtain other "appropriate equitable relief" to redress the violation. 29 U.S.C. § 1132(a)(3); *see Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002). The reformation remedy is available under ERISA where "one party is mistaken and the other commits fraud or engages in inequitable conduct." *Amara v. Cigna Corp.*, 775 F.3d 510, 525 (2d Cir. 2014). Even assuming

14

Plaintiff has pled unilateral mistake, Compl. ¶ 57, nowhere in the pleading does she raise any allegations of fraud—let alone satisfy Federal Rule 9(b)'s heightened pleading standard. *See D'lorio v. Winebow*, 920 F. Supp. 2d 313, 324 (E.D.N.Y. 2013) ("As the Plaintiff's Complaint raises no factual allegations suggesting the existence of either mutual mistake by the parties or fraud on the part of the Defendant, the remedy of reformation is unavailable in this action."). And Plaintiff's contrary argument—that "[r]egardless of how one might define inequitable conduct, it surely includes . . . drafting ERISA plans which violate the law"—would wipe the fraud requirement out of this doctrine, permitting plaintiffs to obtain reformation solely by showing a statutory violation and unilateral mistake. The Court thus also dismisses Plaintiff's reformation claim.

Finally, Plaintiff alleges that Disney failed to provide documents she requested to advance her claim, in violation of ERISA. To begin, the Court notes that Plaintiff identifies the documents which Disney allegedly failed to disclose *only* in her opposition brief, and merely alludes to them in her complaint. *See* Compl. ¶¶ 59–69 (noting in general terms that Disney failed to satisfy its disclosure obligations as to "other documents"). But even if the Court were to overlook this pleading deficiency and consider Disney's failure to disclose these additional documents, this claim would still warrant dismissal. In her opposition brief, Plaintiff argues that she requested that Disney provide her with "[c]opies of all documents concerning the manner in which [Disney had] previously interpreted Section 2(l) of the Plan, in particular interpretations of the term 'Layoff' as it is used in the Plan." Pl. Br. at 20. In support of the proposition that Disney violated its statutory obligations by not providing these documents, Plaintiff cites only a provision of ERISA that requires the "administrator [to] . . . furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining

15

agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4); *see* Pl. Br. at 20 (arguing that there is "no doubt" this provision requires disclosure of these documents). However, the statute plainly does not compel disclosure of an employer's previous employment decisions, and Plaintiff never explains why such decisions would constitute "instruments under which the plan is established or operated." *Id.* Nor does the regulation cited by Plaintiff in her complaint require disclosure of such documents. *See* 29 C.F.R. § 2575-502c-1 (noting that plan administrators may be held liable up to $1100 per day for violating ERISA § 502(c)(2)). The Court thus dismisses Plaintiff's documents claim.

\* \* \* \* \*

Because the Court concludes that Soto has not satisfied the notice requirement, it does not address Disney's other arguments for dismissal—namely, that Soto lacks statutory standing and that the Plan Administrator did not err in concluding Soto had not satisfied the layoff requirement. In sum, because Plaintiff has alleged in her own complaint that she did not satisfy one of the Plan's requirements for benefits, her claims must be dismissed.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED. This resolves Dkt. No. 25. Additionally, Plaintiff seeks leave to amend her complaint. *See* Pl. Br. at 23 ("[S]hould [Disney's] Motion be granted in whole or in part, Plaintiff should be granted leave to amend."). The Court declines to afford Plaintiff a second opportunity to amend her complaint. Soto has already been provided one opportunity to amend her pleading, and given Plaintiff's allegation that she has not satisfied one of the Plan's requirements for eligibility, Compl. ¶ 25, any further amendment would be futile. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming denial of leave to amend on

futility grounds where the plaintiff "has suggested no new material she wishes to plead" and "[t]he problem . . . is substantive"). The Clerk of Court is therefore respectfully ordered to enter judgment and close this case.

SO ORDERED.

Dated: November 9, 2020
       New York, New York

_____
ALISON J. NATHAN
United States District Judge